UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTHONY TODD GAUTREAUX and JODY GAUTREAUX | CIVIL ACTION NO. 08-4645 |
| | SECTION: C |
| VERSUS | |
| TETRA APPLIED TECHNOLOGIES, LLC | MAGISTRATE: 2 |

**ORDER AND REASONS**

Before the Court are cross motions for summary judgment by third party defendant Superior Performance, Inc. ("Superior") and defendant Forest Oil Corporation ("Forest Oil") on the issue of indemnity (Rec. Docs. 65, 81). In addition, Forest Oil filed a motion for summary judgment on the independent contractor defense (Rec. Doc. 76) that Superior opposes (Rec. Doc. 88). The motions are before the court on the briefs, without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the Court DENIES Forest Oil's motion for summary judgment on indemnity and Forest Oil's motion for summary judgment on the independent contractor defense, and GRANTS Superior's motion for summary judgment for the following reasons.

**I. Background**

Anthony Todd Gautreaux ("Gautreaux") alleges that on May 17, 2008, he suffered "severe and disabling injuries" while "attempting to install seal rings on drill pipe located on a materials barge moored to the D/B [(Drilling Barge)] Tetra 28" owned by Tetra Applied Technologies, LLC ("Tetra"). (Rec. Doc. 1 at 2). The work being done was pursuant to a "Job

1

Call Out" to Forest Oil Well B-48. (Rec. Doc. 65-5 at 17-18). Gautreaux was employed by Superior as a "pipe thread representative" at the time of the alleged accident. (Rec. Doc. 80-3 at 1). In this capacity, he inspected and installed seal rings on completion tubing. (Rec. Doc. 65-1 at 2).

In October 2008, Gautreaux filed suit against Tetra seeking damages for his alleged injuries. (Rec. Doc. 1). In February 2009, Gautreaux filed an amended complaint, adding Forest Oil as a defendant. (Rec. Doc. 11). In September 2009 Forest Oil filed a Third Party Complaint against Superior, alleging that it is owed defense, indemnity, and additional insured status under a Master Service Contract between Forest Oil and Superior, (Rec. Doc. 40) and in December 2009 Tetra filed a cross claim against Superior arguing the same. (Rec. Doc. 60).

The indemnity provision reads, in relevant part:

Contractor agrees to indemnify, defend, and save harmless Forest Group . . . from and against any and all claims, demands, judgments, defense costs, or suits (including but not limited to, claims, demands, judgments or suits for . . . bodily injury . . . or for loss of services or wages . . . ) by Contractor or its Subcontractor or any employees . . . of Contractor or Subcontractor . . . in any way, directly or indirectly, arising out of or related to the performance of this Contract.

Superior argues that both claims are prohibited by the Louisiana Oilfield Anti-Indemnity Act, R.S. 9:2780. (Rec. Doc. 65-4 at 3). Both sides have filed motions for summary judgment, focusing on whether maritime law or Louisiana law control the instant dispute.

Forest Oil has also filed a motion for summary judgment urging dismissal of Gautreaux's claims against it on the basis of the independent contractor defense. (Rec. Doc. 76).

**II. Law and Analysis**

*a. Summary Judgment*

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

*b. Indemnity and Defense*

In the Indemnity provision of Master Services Contract, quoted above, Superior agreed to indemnify and defend Forest Oil for claims such as Gautreaux's. Superior now asserts that the provision is invalid under Louisiana law. The threshold choice of law question is, in this case, dispositive. Forest and Superior have filed cross motions for summary judgment, arguing whether the work conducted by Gautreaux was maritime as a matter of law, validating the indemnity clause, or non-maritime, in which case Louisiana law governs[1] and the indemnity provision is barred by the Louisiana Oilfield Anti-Indemnity Act, R.S. 9:2780.[2]

Although this is far from the first time a district court has had to grapple with the question presently before the Court, as the Fifth Circuit has noted, "[w]hether a contract is or is not maritime in nature is a quotidian issue whose resolution is governed by no broad rubric discernible from the numerous decided cases." *Davis and Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 313 (5th Cir. 1990). Rather, determining the merits of the parties' claims necessitates a nuanced discussion of the Fifth Circuit's decisions, and a careful review of the facts. *See Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 380 (5th Cir. 2005) ("the final result turns on a minute parsing of the facts").

The Court's first steps, however, are quite clear. First, the Court must undertake an examination of the "historical treatment in the jurisprudence" of the type of work at issue–in this

---

[1] Neither Forest Oil nor Tetra argues that law other than Louisiana's should apply if maritime law is found to be inapplicable.

[2] Tetra asserts that it is a member of the "Forest Group" entitled to indemnification by Superior, and joins Forest Oil in opposition of Superior's motion. (Rec. Doc. 92).

4

case, seal ring installation–and then, second, the Court must engage in a fact specific inquiry applying the six factor test laid out in *Davis*, 919 F.2d at 316. Those six factors are:

   (1) what does the specific work order in effect at the time of injury provide?

   (2) what work did the crew assigned under the work order actually do?

   (3) was the crew assigned to work aboard a vessel in navigable waters?

   (4) to what extent did the work being done relate to the mission of that vessel?

   (5) what was the principal work of the injured worker? and

   (6) what work was the injured worker actually doing at the time of injury?

*Davis,* 919 F.2d at 316.

*i. Historical Treatment*

As stated above, the Court's first task is to investigate the historical treatment. Although no cases directly discuss seal rings, the Fifth Circuit's jurisprudence relating to the oil and drilling industry is instructive.

Two distinct lines of cases inform the Court. *Thurmond v. Delta Well Surveyors*, 836 F.2d 952 (5th Cir. 1988) and *Domingue v. Ocean Drilling and Exploration Co.*, 923 F.2d 393, 397 (5th Cir. 1991) each found contracts for the provision of wireline services to be non-maritime in nature. In contrast, *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115 (5th Cir. 1992) and *Demette v. Falcon Drilling Co., Inc.*, 280 F.2d 492 (5th Cir. 2002), overruled on other grounds *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009), each found contracts for "casing" services to be maritime contracts. *Hoda v. Rowan Companies, Inc.*, 419 F.3d 379 (5th Cir. 2005) held that "torquing bolts on a blow-out preventer from a jack-up drilling rig used as a work platform constitutes a maritime contract." *Id.* at 381. The Court

must cull from these precedents the relevant factual analyses, and apply them to the contract for inspection and installation of seal rings.

In *Campbell*, the court distinguished "wireline services aboard a drilling vessel" in which the vessels at issue served as "mere[] . . . work platforms" from an accident that occurred when a member of a casing crew was injured while transferring to a jackup drilling rig, "which is one of the special-purpose watercraft that this court has explicitly characterized as vessels." 979 F.2d at 1122 (quoting *Domingue*, 923 F.2d at 397). Whereas wireline work was "only remotely related to the work of the vessel," *id*. at 1122, the court held that the work of a casing crew is "inextricably intertwined with maritime activities since it required the use of a vessel and its crew." *Id.* at 1123 (quoting *Davis*, 919 F.2d at 317). *Hoda* read *Campbell* to hold that it was "[b]ecause the casing crew required the use of the rig's derrick and draw works to accomplish its tasks, the contract work was deemed 'inextricably intertwined' with the 'maritime activities' of the rig and crew." 419 F.3d at 382 (quoting *Campbell*, 979 F.2d at 1123).

In both cases, the court cited the use of equipment as evidence of the requisite "intertwining." In *Campbell*, the casing crew used the vessel's derrick and draw works to accomplish their task. 979 F.2d at 1123. In *Hoda*, the connection was somewhat more tenuous: although the casing crew "did not require the use of the vessel, her personnel, or equipment" it "would have had nothing to do" had the vessel's crew not performed its responsibilities, which *did* require the use of the vessel's equipment. 419 F.3d at 381. The court concluded that the "functional interrelationship of [the] work with the [vessel]" weighed in favor of finding a maritime contract. *Id.* at 383.

6

The parties also highlight two arguments about the relevance of the "vessel"[3] on which Gautreaux was injured. These arguments are interrelated, and also overlap with the "intertwining" argument discussed above.

First, Superior argues that it is not the place of the alleged injury, but the objective of the contract that should control the Court's inquiry. (Rec. Doc. 65-4 at 7). In arguing this point, both Forest Oil and Superior cite the Supreme Court's decision in *Norfolk Southern Railway Company v. Kirby*, 543 U.S. 14 (2004) in support of their positions. *Norfolk* was a "maritime case about a train wreck" in which the court held that the "boundaries of admiralty jurisdiction over contracts . . . [are] conceptual rather than spatial" and "depend[] upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Id.* at 18, 24 (internal citations omitted). Superior interprets this language to command the Court to consider the "principal objective of the contract," which they argue is oil well completion. (Rec. Doc. 65-4 at 7). Forest Oil argues the Court must take a "conceptual" approach. (Rec. Doc. 80 at 18). "Conceptually," they assert, "the installation of the seal rings on the tubing pulled out of the Well by the drilling barge directly contributed to the mission of that vessel operating on navigable waters . . . [T]he reality is that the entire operation was at a standstill until Gautreaux could complete his task aboard the drilling barge." (Rec. Doc. 80 at 18). These arguments are not at odds, except as to the application of the law to the facts.[4]

---

[3] The Court uses the term "vessel" for descriptive purposes, and no legal conclusions should be drawn from its use throughout this opinion except were explicitly indicated.

[4] Forest Oil also argues that *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009), which provided a mechanism for determining the situs of a maritime contract, is "instructive" on this point. (Rec. Doc. 80 at 17). However, that case specifically

Second, Superior argues that *Davis*, *Thurmond* and *Domingue* held that when a vessel's "transportation function" is not necessary for the work at issue in the contract, its role is "incidental" to the contract and the contract should be held non-maritime. (Rec. Doc. 65-4 at 11). In *Domingue*, the court compared all three cases, reaching the following conclusions. In *Thurmond*, the "predominant obligation under the contract was to provide a barge and crew with wireline equipment . . . the use of the work barge was only incidental to the performance of the contract." 923 F.2d at 397. Similarly, in *Domingue*, the vessel was serving as a "work platform": the fact of it being a "vessel" was "nothing more than incidental to its purpose." *Id*. By contrast, in *Davis*, the barge at issue served as a "mobile maintenance unit for a work crew which performed its work predominantly aboard the barge." *Id.* n.7.[5]

Forest argues that the Supreme Court's decision in *Stewart v. Dutra Construction Co.*, 543 U.S. 481 (2005), and the Fifth Circuit's application of that case in *Holmes v. Atlantic Sounding Company, Inc.*, 437 F.3d 441 (5th Cir. 2006), hold that the transportation function of a vessel is no longer a determinative factor for maritime jurisdiction. (Rec. Doc 80 at 10). However, the holdings in those cases were limited to the definition of a "vessel" under the Jones Act and the Longshore Harbors Workers' Compensation Act. *Holmes*, 437 F.3d at 447. They do not, as Forest argues, suggest an expansion of maritime jurisdiction, nor do they contradict the language in *Domingue*. (Rec. Doc. 80 at 14). That said, in *Hoda*, the most recent decision

---

dealt with the determination of jurisdiction under the Outer Continental Shelf Lands Act, 43 U.S.C. s. 1331, not with distinguishing maritime from non-maritime contracts. *Id.* at 784-85.

[5] The *Campbell* court also noted the distinction between fixed and floating platforms, as discussed in *Herb's Welding, Inc. v. Gray*, 470 U.S. 414 (1985) and *Fontenot v. AWI, Inc.*, 923 F.2d 1127, 1131 (5th Cir. 1991). 979 F.2d at 1121 n.8.

8

on point, the court glossed over the fact the transportation function of the drilling rig at issue was not necessary for performance of the services, and held that the contract was maritime. 419 F.3d at 383; *see also Demette*, 280 F.3d at 501 (finding a maritime contract when a worker was injured while working on a jacked-up drilling rig). This observation only reenforces the understanding that no single factor in this somewhat tortured analysis is dispositive.[6]

The Court declines to manufacture from the above comparisons a checklist of factors relevant to its determination. To do so would duplicate what the Fifth Circuit has already done in *Davis*. Thus a review of the historical treatment cannot degenerate into a search for dispositive touchstones of a maritime contract. Instead, the Court makes the following observations about the similarities and dissimilarities between the cases discussed above and the instant dispute.

As is typical in the industry, and in cases such as this, the work done by Superior for Forest was governed by a Master Service Contract. Such master services contracts typically do not expressly contemplate the precise nature of the work to be performed or the vessels or tools necessary for its completion. *Davis*, 919 F.2d at 315. The Fifth Circuit has held that in these cases, the Master Service Contract must be read in conjunction with the work order. *Davis*, 919 F.2d at 315 ("[t]he actual contract between the parties therefore consists of the blanket agreement as modified by the later work order"). Thus, if "an injury occurs in the performance of a separable maritime obligation even thought it is principally non-maritime, the complete

---

[6] Superior also suggests that whether the accident occurred in Louisiana territorial waters or the Outer Continental Shelf should inform the Court's analysis. (Rec. Doc. 65-4 at 13). The case law does not support this assertion.

contract is nevertheless subject to maritime law." *Id.* Here, there was no written work order but rather a "Job Call Out" (Rec. Doc. 65-5 at 17-18). However, the Certificate of Insurance attached to the Master Service Contract indicated that "Type of Contractor/Vendor" was "Visual Pipe Thread Inspection." (Rec. Doc. 65-5 at 6).

In this case, the objective of the contract considered as a whole was pipe thread inspection. Superior characterizes this as non maritime because it does not "concern the operation of a vessel," (Rec. Doc. 65-4 at 7) (quoting *Falcon Operators Inc. v. P.M.P. Wireline Services, Inc.*, 1997 WL 610825 at*5 (E.D. La. 1997), and because Superior did not provide the vessel or platform on which the accident took place. Forest Oil does not dispute that pipe thread inspection "has nothing to do with traditional maritime activity or commerce." (Rec. Doc. 80 at 13).

However, the purpose of the pipe thread inspection was to further the mission of the Tetra 28 drilling barge and allow drilling to take place. Forest Oil notes that "Gautreaux was tasked with the job of inspecting and replacing the seal rings of the removed tubing so that the tubing could be put back in the Well." (Rec. Doc. 80 at 16). They point out that without tubing, seal rings, and the drilling barge, the Well could not be completed. (Rec. Doc. 80 at 16). Although Forest Oil admits that the initial seal rings were inspected "[b]ecause of problems encountered with the Well," (Rec. Doc. 80 at 16), after those rings were installed, Gautreaux was told to install "400 more joints of pipe that were on the barge that also needed to be done as quickly as possible." (Rec. Doc 80-2 at 12). Superior suggests that Forest Oil's argument is too broad, and would lead to all contracts related to well-completion being characterized as maritime, despite the Fifth Circuit's warning to the contrary in *Hoda*. (Rec. Doc. 85-4 at 5); 419

10

F.3d at 383 ("[W]e do not accept [the] broad characterization whereby oil and gas services contracts are maritime whenever they contribute to the mission of the jack-up drilling rig. To do so would conflict with *Davis* and *Thurmond*."). Like the torquing of blow-out preventer stacks' bolts in *Hoda*, the seal ring installation was a necessary and limiting step for the activity on the drilling barge. This is distinct from the wireline services in *Domingue* and *Thurmond*, as wireline services are not comparably integral to the well-completion process. *See Hoda*, 419 F.3d at 382 n.5 ("A wireline operation assists on partially drilled oil and gas wells and gathers relevant geophysical data"). Unlike *Hoda*, though, the seal ring inspection and installation process is "self-contained" and does not require a vessel and crew for completion. 419 F.3d at 383.

Next, the Court considers the use of equipment in completing Gautreaux's task. As noted by Superior, the only tools required for Gautreaux's work were the "end of a hammer" and "picks and files and mirrors" (Rec. Doc. 85-4 at 3). Forest argues that "the barge's equipment was utilized to pull the tubing out of the Well and place[ it] in a position to allow Gautreaux to inspect and replace the seal rings." (Rec. Doc. 80 at 13). But, again, unlike the blow-out preventer torquing in *Hoda*, the seal ring installation itself could be completed entirely without "vessel" equipment.

Lastly, the Court looks to the importance of the vessel's transportation function in Gautreaux's work. It is apparent that no "transportation function" was necessary. Rather, much like the situation in *Domingue*, Gautreaux was performing his inspections and installations on what amounts to a floating work platform. 923 F.2d at 397.

11

Viewing these comparisons as a whole, the historical treatment suggests that the contract between Forest Oil and Superior was a non-maritime contract. Although there are elements on each side of the argument, the Court is persuaded that the facts at hand have more similarity to the "wire-line" cases than the "casing services" cases. The seal ring inspection and installation, though ultimately necessary to the well completion process, did not itself involve any tasks that are inherently maritime in nature.

*ii.* Davis *factors*

The above determination is confirmed by the Court's application of the *Davis* factors. As mentioned above, those six factors are as follows:

(1) what does the specific work order in effect at the time of injury provide?

(2) what work did the crew assigned under the work order actually do?

(3) was the crew assigned to work aboard a vessel in navigable waters?

(4) to what extent did the work being done relate to the mission of that vessel?

(5) what was the principal work of the injured worker? and

(6) what work was the injured worker actually doing at the time of injury?

919 F.2d at 316. Here, the application of the factors is as follows:

1) The work order (in this case, a Master Service Contract combined with a job call out) was to inspect and install seal rings for Forest Oil at a specified oil rig and well (Rec. Doc. 80-2 at 17). Although the call out involved a rig, seal ring inspections are not inherently maritime. 2) Gautreaux, the only Superior employee sent on the job call out, performed the seal ring inspection and installation, first on the Tetra 28 and later on a "materials barge" attached to the

Tetra 28. 3) Gautreaux was working on the Tetra 28 and on the "materials barge," which is where the injury occurred. The parties disagree on whether that barge constitutes a "vessel in navigable waters." Superior argues that Gautreaux was not contracted to perform any "traditional maritime functions" (Rec. Doc. 65-4 at 15), but the caselaw makes clear that test is much more straightforward: was the employee assigned to *work* aboard a vessel in navigable waters. *See Demette*, 280 F.3d at 501. The only question is whether the materials barge was a "vessel." In *Davis*, the Court emphasized the transportation function of the vessel as it related to the employee's work, 919 F.2d at 317, but some post *Davis* cases have simply looked to whether the work was performed at sea. *See Hoda*, 419 F.3d at 383 (worker injured on jack-up drilling rig considered to be on a vessel); *Demette*, 280 F.3d at 501 (same). 4) As discussed above, seal ring inspections are a necessary step to well completion, but the activity itself is "self-contained" and does not require the use of vessel equipment. *Hoda*, 419 F.3d at 383. 5) Gautreaux was the only Superior employee assigned to the job call out, so he was responsible for the seal ring inspection and installation. 6) At the time of his injury, Gautreaux was installing seal rings on completion tubing.

Again, while some of the factors (e.g. the third and fourth factors) are ambiguous, overall the factors highlight the lack of a "salty flavor" in the contracted work. *Domingue*, 923 F.2d at 395.

*iii. The Louisiana Oilfield Anti-Indemnity Act*

Having determined that the contract is non-maritime in nature, the Court must examine the ramifications of this decision.

13

The Louisiana Oilfield Anti-Indemnity Act ("LOIA") provides in relevant part:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La.Rev.Stat.Ann. § 9:2780 (B) (2005).

The purpose of the LOIA is "to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principals' negligence." *Fontenot v. Chevron U.S.A., Inc.*, 676 So.2d 557, 563 (La.1996). The LOIA thus nullifies any indemnity provision providing indemnity for liabilities arising out of personal injuries caused by any negligence or fault on the part of the indemnitee. *Meloy v. Conoco, Inc.*, 504 So.2d 833, 838 (La.1987). However, in *Meloy*, the Supreme Court of Louisiana held that after trial on the merits an indemnitee who was not at fault may recover cost of defense from the indemnitor. *Id.* at 839. The *Meloy* exception does not apply unless the indemnitee and its agent, employee, and independent contractor who is directly responsible to the indemnitee, are found faultless after trial. La.Rev.Stat. Ann. § 9:2780(A) (2005); *Home Ins. Co. v. Garber Indus., Inc.*, 588 F.Supp. 1218, 1223 (W.D.La. 1984).

Here, section 4.1 of the Master Service Contract provides that contractors such as Superior will indemnify the Forest Group for suits for personal or bodily injury. (Rec. Doc. 65-5 at 1). This provision is prohibited by the LOIA because it attempts to provide a right of

14

indemnity to an indemnitee even though it might be at fault.  The *Meloy* exception is not applicable as neither Forest Oil nor Tetra have been found free from fault.

Summary judgment in favor of Superior is warranted.  If Forest Oil or Tetra are ultimately found free from fault, their claims for indemnity may be reurged under *Meloy*.

*C. Independent Contractor Defense*

Forest Oil also moves for summary judgment, arguing 1) that Forest Oil is not liable for a maritime tort; and 2) that because Superior was an independent contractor, Forest Oil cannot be indemnified for Gautreaux's damages, regardless of the above choice of law discussion.  (Rec. Doc. 76).

Forest Oil argues that because Gautreaux is claiming a maritime negligence tort, general negligence law applies.  They move for summary judgment, asserting that they owed no duty to Gautreaux and that they did not cause the accident.  (Rec. Doc. 76-5 at 9-10).

In support of their independent contractor argument, Forest Oil cites the Master Service Contract, which establishes an independent contractor relationship between Forest Oil and Superior, and argues that Forest Oil maintained no operational control over Gautreaux's activities.  (Rec. Doc. 76-5 at 6, 11).

Rather than address those arguments directly, Gautreaux argues that Forest Oil is potentially liable under the Longshore & Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq*, because it "bareboat chartered the deck boat" on which Gautreaux was injured and therefore "it owed a duty to insure that the deck barge was free of unreasonable hazard . . . as owner pro hac vice."  (Rec. Doc. 97 at 1).

33 U.S.C. § 905 (b) provides in relevant part:

(b) Negligence of vessel
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title.

"For [pro hac vice] ownership to be found, it is generally necessary for the defendant's relationship to be that of shipowner-bareboat charterer." *Bossard v. Port Allen Marine Service, Inc.*, 624 F.2d 671, 672 (5th Cir. 1980).

It is evident that there are controlling questions of law[7] not yet adequately briefed and controlling questions of fact that remain in dispute,[8] both of which prevent the Court from granting summary judgment on this question.

Accordingly,

IT IS ORDERED that Forest Oil's motion for summary judgment on indemnity is DENIED, Forest Oil's motion for summary judgment on the independent contractor defense is DENIED, and Superior's motion for summary judgment is GRANTED. Forest Oil's third party complaint and Tetra's cross claim are DISMISSED.

New Orleans, Louisiana, this 10th day of May, 2010.

---

[7] For example, Forest Oil has not responded to Gautreaux's suggestion that the LHWCA applies, or that as the alleged owner pro hac vice it would be liable to Gautreaux's injuries under that act.

[8] For example, Gautreaux's supplemental briefing suggests that the deck barge at issue was owned by Delta Towing L.L.C but "requested and paid for by Forest" (Rec. Doc. 97 at 1). Additionally, regardless of the proper theory of recovery it is clear that the parties will need to thoroughly address the precise duties of Forest Oil employee Kerry Robertson, who was at the Well at the time of the accident.

16

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**